922

**HOUSING CORPORATION OF AMER-ICA, a Delaware Corporation,**

v.

**The UNITED STATES.**

No. 63–72.

United States Court of Claims.

Nov. 10, 1972.

W. Gregg Kerr, Jr., Pittsburgh, Pa., attorney of record, for plaintiff; Dale Edward Williams, Pittsburgh, Pa., of counsel.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge.

Plaintiff, Housing Corporation of America, performed work pursuant to its contract with the Monroe Housing Commission for the construction and sale of housing units for the poor and elderly of Monroe, Michigan. Plaintiff sues the United States as an alleged party to the contract. Defendant denies any privity of contract between plaintiff and defendant and asserts sovereignty in support of its motion for summary judgment.

The Monroe Housing Commission was a so-called local authority set up by the city to comply with the United States Housing Act of 1937 (42 U.S.C. §§ 1401 et seq.) and to become eligible for federal assistance in development of low-rent housing projects. The city, acting through the Commission, and the United States, acting through the Department of Housing and Urban Development (HUD), entered into a Consolidated Annual Contributions Contract on April 18, 1969, pursuant to which defendant was to lend up to 90 percent of the total project costs. In order to achieve and maintain the low-rent character of the project, defendant was to make annual contributions to the Commission for 40 years and the Commission was to repay the loan, with interest, from funds raised by the sale of project bonds.

On May 9, 1969, plaintiff entered into a Contract of Sale with the Commission for the development, construction and sale of the project. This contract was in the format suggested by defendant's handbook relating to such matters and was approved by HUD as one eligible for financial assistance. Defendant's approval was by signature of an authorized representative of HUD and appears on the contract document under the signatures for the plaintiff contractor and the Commission. Article IX of the contract stated:

> Article IX. *Approval by Government.* The approval of this Agreement by the Government signifies that the undertaking by the Purchaser of the acquisition of the property constitutes a "project" eligible for financial assistance under the Annual Contributions Contract identified in Exhibit "C;" that said Annual Contributions Contract has been properly authorized; that funds have been reserved by the Government and will be available to effect payment and performance by the Purchaser hereunder; and the Government approval of the terms and conditions hereof.

Defendant also approved miscellaneous drawings, plans and specifications. Ar-

ticle IV of the Contract of Sale prohibited changes in the contract price in excess of $4,000, unless approved by the United States.

■ When the Contract of Sale was closed in August 1970, closing statements contained a paragraph pursuant to which plaintiff (the seller) reserved its claim for payment of certain change orders which had not been approved or funded by HUD and as to which the Commission had not admitted liability for payment, absent such approval by HUD. Since the petition was filed in this court some of the change orders have been approved and funded by defendant but others remain in dispute here. The question for resolution by the pending motion is whether plaintiff on its Contract of Sale with the Monroe Housing Commission, which contract was approved by defendant as eligible for financial assistance under defendant's Annual Contributions Contract with the Commission, has a claim within the jurisdiction of the Court of Claims against defendant for unapproved changes for additional work. The question must be answered in the negative.

The opening paragraph of the May 9, 1969 Contract of Sale states:

This Agreement made this 9 day of May, 1969, by and between Housing Corporation of America, a Delaware Corporation, hereinafter called the "Seller," and the Monroe Housing Commission, Monroe, Michigan, hereinafter called the "Purchaser," * * *.

This makes it rather clear who the parties are and defendant is not one of them. However, defendant's signature of approval at the bottom of the document, plus Article IX quoted above, cause plaintiff to contend that defendant must be considered a party and to have waived its sovereignty. Aside from these considerations, plaintiff contends that there is a fact question here which must defeat the motion because defendant's representatives made direct demands upon plaintiff for contract changes and agreed to pay for them. This is supported by an affidavit of plaintiff's chairman, Mr. Leonard E. Treister, who identifies defendant's agents as Joseph Sabella and Harold Brown, both from the Chicago Regional Office of HUD. Plaintiff believes that it has thus established a prima facie case of privity of contract between plaintiff and defendant regarding the changes. Finally, plaintiff believes that Article IX of the Contract of Sale creates a third-party beneficiary relationship between plaintiff and defendant, so as to confer jurisdiction upon this court.

■ The contract here in issue is one of many pursuant to which the Federal Government subsidizes projects of state and local authorities for the public betterment. The United States, however, does not make itself a party to the contracts relating to said projects but obligates itself by separate agreements, as here, to local authorities for the funding of those projects it approves. The significance of that approval is spelled out here in Article IX. This does not create an express or implied contract between plaintiff and defendant nor does it make the Commission defendant's agent through HUD. HUD's actions were performed in defendant's capacity as sovereign. This principle has been settled for some time by a similar case involving construction under the Federal-Aid Highways Act. D. R. Smalley & Sons v. United States, 372 F.2d 505, 178 Ct. Cl. 593, cert. denied, 389 U.S. 835, 88 S. Ct. 45, 19 L.Ed.2d 97 (1967). The *Smalley* case is squarely in point.

■ If then there is no privity between the parties based on the contract language and understanding, has plaintiff brought itself within our Rule 101 (d) by showing genuine issue as to a material fact which would, if true, as plaintiff represents, make a difference in the result? In such event, summary judgment is not appropriate. Any doubts must be resolved against defendant as the moving party. Garcia v. United States, 108 F.Supp. 608, 123 Ct.Cl. 722 (1952).

Plaintiff, as aforesaid, relies upon the affidavit of Mr. Treister that defendant ordered and plaintiff performed changes and additions to the work beyond the requirements of the contract and that defendant agreed to pay for same through its duly authorized agents, Sabella and Brown, thus creating an express contractual obligation between plaintiff and defendant which is within our general jurisdiction. In direct refutation of this affidavit defendant has produced affidavits of Sabella and Brown who flatly deny giving plaintiff any orders to perform extra work and deny promising to pay for it. On the surface, this would raise a question of fact which, ordinarily, would have to be resolved in the Trial Division by a commissioner who would hear the testimony and judge the credibility of these individuals whose recollection of events is in such direct conflict. That will not be necessary here because, even if we assume, without deciding, plaintiff's evidence is correct, it would not pose a genuine issue as to a material fact that would change the result. The reason for this is that such orders and assurances, if given by defendant's employees, were outside their authority and plaintiff has not shown otherwise.

Mr. Sabella, at the pertinent time, was Director of Production in the HUD Regional Office in Chicago. His function was to serve as principal adviser to the Regional Administrator, to recommend approval of contracts entered into between local housing authorities and private contractors, and to recommend approval of Annual Contributions Contracts between the United States and local housing authorities, the same being the mechanism whereby the other contracts were funded. His affidavit is that he consistently told Treister that HUD would consider only those claims submitted to the Monroe Housing Commission and that he did not order additional work or agree to pay for it.

Mr. Brown was Chief of the Construction Services Branch in the HUD Chicago Regional Office. It was his responsibility to monitor the construction of plaintiff's project and to review such change orders as submitted to HUD by the Monroe Housing Commission. He spoke to Mr. Treister only twice, when the latter called him on the telephone. The conversations did not relate to changes or additional work. He not only swears that he had no authority to order or promise to pay for extra work and did not do so, but that it would have been a violation of the Contract of Sale which he was under obligation to enforce.

It is evident that neither of these HUD officials was a contracting officer nor authorized to commit defendant to any financial obligations of a contractual nature directly with private parties. The United States is not bound by the unauthorized acts of its agents. Here, assuming that plaintiff's recollection of events is correct, it has not shown that Sabella and Brown acted within their authority. It is plaintiff's responsibility to make such a showing and plaintiff is deemed to have notice of their limited authority. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); National Bank of N. America v. United States, 456 F.2d 754, 197 Ct.Cl. 948 (1972); California-Pac. Util. Co. v. United States, 194 Ct.Cl. 703 (1971); Fountain v. United States, 427 F.2d 759, 192 Ct.Cl. 495 (1970), cert. denied, 404 U.S. 839, 92 S. Ct. 131, 30 L.Ed.2d 73 (1971); Miami Metropolitan Bldg. Corp. v. United States, 180 Ct.Cl. 503 (1967).

Remaining for disposition are plaintiff's contentions that it has third-party beneficiary rights arising principally from Article IX of the Contract of Sale between plaintiff and the Commission. This is so, plaintiff says, because defendant approved Article IX which constitutes this specific project as one eligible for financial assistance and which states that funds have been reserved by the Government and *"will be available to effect payment and performance by the Purchaser."* [Emphasis supplied.] This, plaintiff alleges,

shows an intention in the Contract of Sale to create a body of enforceable rights in plaintiff under that provision which was inserted for the benefit of plaintiff as well as to benefit the Monroe Housing Commission. Plaintiff asserts that it is only upon the guarantees of payment by defendant that contractors and developers ordinarily undertake projects of the type here involved.

■ Plaintiff places heavy reliance on Hebah v. United States, 428 F.2d 1334, 192 Ct.Cl. 785 (1970), which recognized a third-party beneficiary relationship in certain circumstances where performance of a promise in a contract will benefit a person other than the promisee. Hebah was a member of an Indian tribe seeking enforcement of treaty rights against the United States. If there is an analogy here, it would seem to be with plaintiff's relationship to the Consolidated Annual Contributions Contract between defendant and the Monroe Housing Commission. If defendant failed to live up to that contract, perhaps plaintiff, under the rationale of *Hebah*, could seek enforcement of defendant's promise to put up the money with which the Commission was to pay plaintiff. That is not the situation here. There is no dispute between defendant and the Commission. Further, section 510 of the Consolidated Annual Contributions Contract specifically bars third-party actions against the Government except by the bondholders, which would seem to preclude a *Hebah*-type action under that contract.

■ Plaintiff seeks to enforce its Contract of Sale with the Commission upon defendant, which is not a party to that contract. The language of Article IX, *supra*, in the Contract of Sale speaks in terms of defendant making funds available *"to effect payment and performance by the Purchaser hereunder."* [Emphasis supplied.] This is not a provision obligating the United States to pay the *seller* (plaintiff) anything.

In summary, there was no privity of contract between defendant and plaintiff, express or implied. Defendant has not consented to be sued by a third party in connection with its contractual arrangements with the Monroe Housing Commission. Defendant's actions in approving the Contract of Sale between plaintiff and the Commission and in funding such contract were sovereign acts which do not subject defendant to liability. Article IX of the Contract of Sale created no obligation upon defendant which is enforceable by plaintiff. Neither has plaintiff established an issue of fact which would result in defeat of defendant's motion for summary judgment because such facts, if established, would not confer the necessary authority upon the agents of defendant who are alleged to have made either an express or implied contract with plaintiff concerning additional work.

Accordingly, defendant's motion for summary judgment is allowed and plaintiff's petition is dismissed.