**Charles DeROCHE, et al.**

v.

**The UNITED STATES.**

**No. 83–82C.**

United States Claims Court.

July 18, 1983.

810

Ross W. Cannon, Helena, Mont., for plaintiffs.

Marsha D. Peterson and Alexander Younger, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Judge.

This case is before this Court on defendant's motion for summary judgment, plaintiffs' opposition, and defendant's reply, submitted with oral argument. Plaintiffs Charles DeRoche, Leland Thomas, and Walter Laas are general construction contractors doing business as, respectively, DeRoche & Thomas Construction Company (DeRoche) and Laas Construction Company (Laas) in Montana.

In 1977, the United States Department of Housing and Urban Development (HUD), pursuant to the United States Housing Act of 1937 (Housing Act), 42 U.S.C. §§ 1401 et seq., entered into an Annual Contributions Contract (ACC) with the Blackfeet Indian Housing Authority (BIHA), a public corporation organized under the laws of the Blackfeet Indian Tribe.[1] The ACC was later amended to provide financing for additional projects, which BIHA contracted with plaintiffs to construct. Plaintiff Laas entered into only one contract for construction of housing on the Blackfeet Indian Reservation. Plaintiff DeRoche entered into several contracts with BIHA, three of which were also for housing construction on the Reservation. Another contract was for construction of "acquisition homes" for purchase by BIHA. The final contract was for construction of water mains on the Reservation. Plaintiffs contend that BIHA, with the knowledge and approval of HUD, allowed funds obligated for the housing construction contracts to be expended for other purposes, thus leaving outstanding balances

due plaintiffs. Plaintiffs further contend that HUD agreed to provide funds for the "acquisition homes" project and upon completion wrongfully disclaimed liability. Finally, plaintiffs contend that HUD caused delays and attendant cost overruns on the water mains project and seek recovery for these excess costs. Defendant contends that HUD has paid virtually all funds to which BIHA is entitled under the amended ACC, and any outstanding balance is available to BIHA upon request and justification of need.

Plaintiffs allege that they can recover against the defendant because there was a waiver of sovereign immunity, HUD's dominant control of BIHA made the Authority an agent of HUD, an express contract or an implied-in-fact contract exists between plaintiffs and HUD, and because plaintiffs are third party beneficiaries of the agreements between HUD and BIHA. Defendant denies any agency on the part of BIHA, any express or implied contracts, and any third party beneficiary rights extending to plaintiffs. The defendant finally asserts that HUD engaged in sovereign acts, thereby precluding liability. This Court finds that there is no genuine issue as to any material fact and holds for the defendant.

Plaintiffs' contention that BIHA was simply a "creature of HUD" because HUD exercised extensive control over the day-to-day operations of BIHA such as to impose liability on defendant is without merit. Plaintiffs recite a litany of alleged actions by HUD to support this contention. Plaintiffs claim BIHA was created solely for the purpose of receiving and disbursing funds for construction projects on the Blackfeet Indian Reservation; HUD controlled the funds allocated to BIHA and the number of BIHA employees; HUD forms were used by BIHA in the bid and contracting processes; HUD approval was required for certain actions such as extensions of time under the contracts between BIHA and the plaintiffs; and the BIHA Recovery Task Force was controlled by HUD and had a

---

1. BIHA is not a federal agency or auspice of the United States.

member Scott Sherburne, who was paid by HUD.

■ First, it is both appropriate and necessary in disbursing federal grant funds that the federal government establish standards and requirements for projects and have oversight of these federal funds to ensure that the intent of Congress is implemented and that the taxpayer's money is not wasted. *D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 597–98, 372 F.2d 505, 507–08, *cert. denied,* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). Second, it is well settled in this Court that a local authority does not become an agent of the federal government due to a federal agency's control and supervision of grant funds. *Id.; Somerville Technical Services v. United States,* 226 Ct.Cl. 291, 296–99, 640 F.2d 1276, 1279–81 (1981); *Housing Corporation of America v. United States,* 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972). Finally, many of the plaintiffs' contentions are inaccurate. Although HUD may have advised BIHA on the hiring and firing of employees, it is clear that BIHA considered itself autonomous on this issue: "[w]e told HUD we would not let them dictate [to] us." BIHA meeting minutes at 2 (January 29, 1981). The BIHA Recovery Task Force, an *ad hoc* advisory committee on contractor's complaints, was created at the suggestion of the Blackfeet Tribal Business Council and was not an agency or division of HUD. Affidavit of Leslie Vallie, HUD Contracting Officer (February 24, 1983). The Task Force had no authority to bind the Tribal government, BIHA, or HUD to any course of action without their individual consent. *Id.* Finally, Scott Sherburne was paid and employed by BIHA. Affidavit of George Wippert, BIHA Executive Director (March 11, 1983).

■ It is well established that the United States is not liable for damages resulting from acts performed in its sovereign capacity. *D.R. Smalley v. United States,* 178 Ct.Cl. at 597, 372 F.2d at 507; *Horowitz v. United States,* 267 U.S. 458, 461, 45 S.Ct. 344, 345, 69 L.Ed. 736 (1925). Any waiver of sovereign immunity and con-

sent to suit must be clearly expressed and strictly construed. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). HUD's disbursal and oversight of grant funds to BIHA were clearly "sovereign acts of the Government and were not directed solely to the [plaintiffs] but affected the general public and were done for the common good and the general welfare." *D.R. Smalley v. United States,* 178 Ct.Cl. at 597, 372 F.2d at 507. Section 1404(a) of the Housing Act, which is relied on by plaintiffs to show a waiver of sovereign immunity, is not "equivalent to Congressional consent to reach the general fund of the Treasury via an action under the Tucker Act." *W.P. Bill Atkinson Enterprises, Inc. v. United States,* 228 Ct.Cl. 886, 888 (1981). This section's consent to suit reaches only funds in the hands of HUD. *Id.* HUD has made available to BIHA, or will make available upon request and justification of need, all funds which it was obligated to provide under the amended ACC. Plaintiffs can reach no other funds in the hands of HUD because, as explained later, there are no express or implied contracts between plaintiffs and defendant, and plaintiffs have no third party beneficiary rights.

■ There is no privity of contract between a builder and the United States government where the builder's contract is not with the federal government but with a local housing authority. *Correlated Development Corp. v. United States,* 214 Ct.Cl. 106, 112–13, 556 F.2d 515, 519 (1977); *Housing Corporation of America v. United States,* 199 Ct.Cl. at 710, 468 F.2d at 924. Here, plaintiffs admittedly entered into construction contracts with BIHA. HUD did not enter into a contractual relationship with plaintiffs. Thus, there is no privity of contract between plaintiffs and the defendant.

■ Even if the element of privity were satisfied, neither an express nor an implied-in-fact contract exists between plaintiffs and the defendant. Plaintiffs' reliance on Part I, § 2(b) of the ACC of July 1, 1977

relating to "Turnkey Method" contracts[2] is factually incorrect and otherwise without merit. A turnkey provision requires that a contract of sale be entered into between a local housing authority (the buyer) and a developer (the seller) whereby the developer builds a project and the local authority purchases the project from the developer. Section 2(b) of the ACC further provides that in the event of a default by the local authority, the federal government has the obligation to continue the project. To enforce the performance of this provision the seller (developer) was given the right to bring an action against the federal government. On its face, § 2(b) of the ACC applies only to projects MT 8–16 and 8–9, for which plaintiffs never contracted. Plaintiffs contracted with BIHA to construct projects Nos. MT 8–17, 8–19, 8–20 and 8–21. Affidavit of Peter A. Downs, HUD Acting Director of Development (February 1, 1983). None of these projects was ever subject to a turnkey provision. *Id.* Plaintiffs' projects were developed under either the Force Account Method or the Conventional Method,[3] and thus were not subject to turnkey provisions. *Id.*

Plaintiffs contend that a trial will establish that oral representations were made to plaintiffs by HUD officials and that HUD ratified promises to supply additional funding to BIHA for changes in the work and the increased costs of construction. Plaintiffs have offered no affidavits supporting this contention. To allow a trial on such bare assertions by plaintiffs would be contrary to United States Claims Court Rule 56(e) in that plaintiffs have failed to "set forth specific facts showing that there is a genuine issue for trial." A vague reference in the Blackfeet Indian Housing Authority Resolution 2–82 of January 29, 1982 (last page) that HUD dealt directly with contractors does not fulfill the Rule's requirement.

Plaintiffs have no status as third party beneficiaries. As demonstrated, the turnkey provision (Part I, § 2(b) of the ACC), is inapplicable to plaintiffs' contracts with BIHA and thus creates no third party rights. Neither have plaintiffs shown that they were intended beneficiaries of the contracts between HUD and BIHA. "In these circumstances, no rights or obligations run from the United States to third-party contractors of grant recipients...." *G-Lam Corp. v. United States,* 227 Ct.Cl. 764, 766 (1981) (citations omitted).

In sum, plaintiffs have no cause of action against the United States. Therefore, it is

ORDERED, that defendant's motion for summary judgment is granted, and the Complaint will be dismissed by the Clerk.

**2.** "Turnkey Method" contracts are defined in 24 C.F.R. § 805.203(b) (1977).

**3.** These methods are defined in 24 C.F.R. § 805.203(c), (e) (1977).