**Willone EUBANKS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 114–88 C.

United States Claims Court.

Jan. 23, 1992.

Joseph D. Johnson, Topeka, Kan., for plaintiff.

John E. Kosloske, Washington, D.C., Atty. of Record, with whom was the Asst. Atty. Gen., for defendant.

## OPINION

HORN, Judge.

This case is presently before the court on the defendant's Motion to Dismiss for lack of subject matter jurisdiction, and on the plaintiff intervenors' separate Motion to Dismiss. Following a review of the filings in this case and after oral argument on the motions, for the reasons discussed below, the court, hereby, GRANTS the defendant's Motion to Dismiss.

**1.** Tenants' rents are based on their income, according to a HUD prescribed formula. *See* 24

## BACKGROUND

Pursuant to 42 U.S.C. § 1437f (1988), the United States Department of Housing and Urban Development (HUD) is authorized to enter into annual contribution contracts with public housing authorities. An annual contribution contract obligates HUD to provide annual funding to public housing authorities to accomplish the program's goal of "aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing," 42 U.S.C. § 1437f(a), by making housing assistance payments to property owners "who agree to upgrade housing so as to make and keep such housing decent, safe, and sanitary...." 42 U.S.C. § 1437f(e)(2).

In carrying out the Moderate Rehabilitation Program, the participating public housing authority solicits applications from property owners, and then determines whether the housing units described in the applications are feasible for inclusion in the program. *See* 24 C.F.R. § 882 (1981). Following an affirmative determination of eligibility, the public housing authority and the owner enter into an agreement to enter into a housing assistance payment contract, in accordance with specified conditions. 24 C.F.R. § 882.508. The housing assistance payment contract is executed for a fifteen year term by the public housing authority and the owner, following the completion of the rehabilitation of the units and acceptance of that work by the public housing authority. 24 C.F.R. § 882.510–.511. The housing assistance payment contract provides for the payment of housing assistance payments by the public housing authority to the owner, which supplements the rent paid to the owner by the occupying tenants.[1]

Contract Rents, the total amounts payable to the owner under the housing assistance payment contract, are established by the public housing authority, according to a HUD prescribed formula which considers projected annual costs to the owner of debt

C.F.R. § 882.412.

service, insurance, taxes, utilities, and management and routing maintenance, plus costs for replacement reserves and return on investment.[2] 24 C.F.R. § 882.-409; HUD, *Handbook, 7420.3 REV-2 CHG 4, Section 8 Housing Assistance Payment Program Existing Housing and Moderate Rehabilitation Processing* 4 (January 1981).

The Topeka Housing Authority applied successfully to participate in the Moderate Rehabilitation Program, and executed an annual contribution contract with HUD on January 28, 1981.[3] On April 24, 1981, the plaintiff applied as a "property owner" under the Moderate Rehabilitation Program for a total of fifteen units. The applications were reviewed and approved by the Topeka Housing Authority.

The plaintiff, Willone Eubanks (as lessee), and the intervenors, Donald and Earlene Redmon (as lessor), executed two leases on October 5, 1981, covering the subject properties for a term of fifteen years, three months, commencing on November 15, 1981. On October 20, 1981, the plaintiff also executed a seven month option to purchase these properties.[4] The Topeka Housing Authority and the plaintiff and intervenors (Donald and Earlene Redmon) entered into two agreements to enter into housing assistance payment contracts on November 10, 1981. Plaintiff asserts that the intervenors were required by the Topeka Housing Authority to sign all contracts, based on specific advice given to the Topeka Housing Authority by the HUD Kansas City Regional office, because of the "somewhat unique" arrangement of the plaintiff being a lessee, rather than the owner of the units. (*See* 24 U.S.C. § 882.102, which defines "Owner" as "any person or entity ... having the legal right to lease or sublease existing housing.") The Topeka Housing Authority calculated the initial Contract Rents according to HUD regulations, based upon the proposals submitted by the plaintiff.[5]

Following completion of the rehabilitation of the units,[6] the plaintiff submitted his costs for that rehabilitation to the Topeka Housing Authority for review as required by HUD regulations. 24 C.F.R. § 882.510. The Topeka Housing Authority accepted these costs as submitted, and the initial Contract Rents determination remained unchanged. The Topeka Housing Authority and the plaintiff and the intervenors executed two housing assistance payment contracts for the units, covering a fifteen year term for each, commencing in four stages from December 2, 1981, through November 5, 1982.[7] The Topeka Housing Authority, accordingly, began making the housing assistance payments to the plaintiff and intervenors in the contractually specified amounts.

During a routine examination of the records and operations of the Topeka Housing Authority for the period April 1, 1982 to September 30, 1983, HUD's Regional Inspector General found that the Contract Rents for the subject units were inflated because in its calculation the Topeka Housing Authority had considered unnecessary, ineligible, and undocumented costs for rents (paid by the plaintiff to the intervenors), taxes, insurance, and rehabilitation. The auditor's report, dated February

---

**2.** An alternative formula, based on average monthly rents was available to the Topeka Housing Authority; however, that alternative formula was not used here. *See* 24 C.F.R. § 882.409(c)(1).

**3.** The annual contributions contract, No. KC–1155–K, was amended on June 29, 1983, to reflect a reduction in the number of units covered.

**4.** This option was never exercised, but was submitted to the Topeka Housing Authority as part of the application process.

**5.** The monthly rent amounts were $281.00 and $300.00 for two bedroom units, and $322.00 for three bedroom units.

**6.** To accomplish the required rehabilitation, a loan was obtained. Plaintiff stated that he borrowed $70,000.00. HUD indicated that the intervenors were the mortgagors and that security on the loan was the fee on the subject properties. The intervenors stated that the loan was in the amount of $78,000.00.

**7.** Housing assistance payment contract numbers 13184 and 14141.

3, 1984, no. 84–KC–202–1004, directed the Topeka Housing Authority to reduce all subsequent monthly housing assistance payments to reflect the audit's revised Contract Rents figures, and to recapture the excess payments already expended.[8] The plaintiff was notified of the finding in a letter from the Topeka Housing Authority dated October 16, 1984, and HUD's directive was implemented by the Topeka Housing Authority beginning in December, 1984.

The plaintiff pursued an administrative appeal of HUD's decision in accordance with the provisions of § 1.15 of the housing assistance payment contract.[9] HUD's regional administrator denied the appeal on April 24, 1985. A final administrative affirmation of the auditor's finding came in a letter from the General Deputy Assistant Secretary of HUD, dated October 21, 1986, but apparently was received by the plaintiff on January 28, 1987.

HUD notified the Topeka Housing Authority in a letter of February 4, 1987, of the audit findings. Following recalculations,[10] the Topeka Housing Authority advised HUD on August 10, 1987, that the amount due to be repaid for excess Contract Rents was $35,537.51.

The plaintiff originally filed a Complaint in the United States District Court for the District of Kansas, naming as defendants the Secretary of HUD, the Topeka Housing Authority, and Donald and Earlene Redmon. The plaintiff sought damages, declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201–02 (1982), for restoration of the terms of the original housing assistance payment contract as to future housing assistance payments, and for reimbursement of "all monies due and owing to the Plaintiff pursuant to terms of the original contracts." Plaintiff alleged that HUD's decisions were based on "unlawful" facts and constituted a "tortious breach of contract" and an "unlawful taking of property without just compensation," citing the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

The defendant filed a Motion to Dismiss in the district court action for failure to exhaust administrative remedies under 28 U.S.C. § 1346(b), and for lack of subject matter jurisdiction over the contract claim. The district court, by unpublished order, found that it lacked jurisdiction to consider the claim. The district court also found that the United States Claims Court might have jurisdiction over the matter. Accordingly, the district court granted the defendant's Motion to Dismiss, but held the case in abeyance to allow the plaintiff to file a motion to transfer the action to the United States Claims Court, under 28 U.S.C. § 1631. The plaintiff filed for the transfer, which was granted.

Following transfer of the district court record to this court, the plaintiff filed his Complaint in this court, which is identical to the Complaint filed in the district court. Donald and Earlene Redmon filed a Motion to Intervene as necessary parties. Following a status conference, the court approved the Motion to Intervene. Subsequently, the separate Complaint of the intervenors and their motion to join the Topeka Housing Authority as a necessary party were filed. The separate Complaint alleges a breach of contract and tortious interference by HUD and the Topeka Housing Authority with the lease relationship between the plaintiff and intervenors.

The plaintiff filed an Amended Complaint, after the court ordered the plaintiff to amend its pleadings to conform to the Rules of the United States Claims Court. In its Amended Complaint, the plaintiff alleges that, pursuant to the Tucker Act, 28

**8.** Contract Rents were reduced to $144.00 and $192.00 for the two bedroom units and to $166.00 for the three bedroom units. $51,073.29 was determined as the amount necessary to be recaptured.

**9.** This clause authorizes the public housing authority or the Owner to submit a claim to the HUD field office, and, if necessary, to the Secretary.

**10.** The Assistant Secretary of HUD, in his findings, had authorized a modified rent approach to redetermine the Contract Rents in an effort to soften the financial impact on the plaintiff.

U.S.C. § 1491 (1988),[11] the United States Claims Court has jurisdiction over this action. The Amended Complaint further alleges that the reduction in the housing assistance payments are "unlawful and arrived at by unlawful conclusions of facts" by the Topeka Housing Authority and HUD, and "are an unlawful taking of the property of the Plaintiff without just compensation." The plaintiff also argues that the decision by HUD "constitutes a breach of contract," has caused him "irreparable financial damage," and that it has rendered him "unable to adhere to his contractual obligations to the Lease Agreement" with the intervenors. Additionally, plaintiff states that he has suffered financial damage by "the loss of the benefit of the bargain that was obtained by entering into the valid contracts with the defendant herein." In the Amended Complaint, the plaintiff asks that "all monies due and owing to the plaintiff pursuant to the terms of the original contracts referred to herein be paid," plus interest and "attorney fees and other reasonable costs." The plaintiff further requests that the court order "the defendant to adhere to the contract as originally signed."

The intervenors filed their Answer to the Amended Complaint. The defendant, however, answered the Amended Complaint by filing a Motion to Dismiss the Complaint of the plaintiff and of the intervenors for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) and Rule 12(h)(3) of the Rules of the United States Claims Court. In its Motion to Dismiss, the defendant argues that since the plaintiff and the intervenors were not parties to a contract with the defendant, they lack the requisite privity of contract with the United States to maintain this action.

Subsequently, the intervenors filed a voluntary Motion to Dismiss without prejudice, founded upon the United States Supreme Court's holding in *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). In their Motion to Dismiss, the intervenors contend that their claim is an "equitable action for specific relief" under *Bowen*, and, therefore, their action properly lies in the United States District Court for the District of Kansas. Accordingly, the intervenors filed a Motion for Reinstatement of the matter in that district court.

In response to the intervenors' Motion to Dismiss, the defendant filed a Reply in which the government distinguishes *Bowen* as a suit to "enforce the statutory mandate" of the Medicaid Act, and asks the court to dismiss the intervenors' Complaint for lack of jurisdiction. In a Response to the defendant's Reply, the intervenors agreed that dismissal for lack of jurisdiction would be proper.

Following oral argument on the pending motions, all the parties submitted further briefing materials in response to the court's questions on issues raised during the proceeding. Intervenors' brief again argues in support of its Motion to Dismiss by reiterating their reliance upon *Bowen*, and asks the court to retransfer this matter back to the United States District Court for the District of Kansas, pursuant to 28 U.S.C. § 1631.

Plaintiff, in his brief in response to defendant's Motion to Dismiss, raises an additional theory of recovery. He asserts that to overcome the privity of contract hurdle in cases such as this, "Courts are ferreting out the United States from behind its legally strategic placement as financial and regulatory mentor of its agents who are signatories to contracts with third parties." Accordingly, the plaintiff asks the court to deny the defendant's Motion to Dismiss and to decide this case along "equitable lien-unjust enrichment" lines. In its Reply to the plaintiff's brief, the defendant rejects plaintiff's argument, stating that this court is not the appropriate forum to hear equitable claims under the Tucker Act. The defendant again asks for dismissal, asserting that this fundamentally contractual claim cannot be maintained against the

---

**11.** The Complaint reads "22 U.S.C. § 1491" in paragraph I and "28 U.S.C. 14 § 14194" in paragraph II.

United States, absent the essential privity of contract.

## DISCUSSION

### I. *Breach of Contract Claim*

 The plaintiff and the intervenors first allege that the decision by HUD to reduce the housing assistance payments constitutes a breach of contract by the United States. As a threshold matter, in order for this court to entertain a breach of contract claim against the United States of the type presented by the instant case, it must be established that the United States has waived its sovereign immunity and consented to be sued. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607, *reh'g denied, United States v. Mitchell,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Waivers of the immunity cannot be implied, but must be unequivocally expressed. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 2475, 110 L.Ed.2d 387 (1990); *United States v. Testan,* 424 U.S. at 399, 96 S.Ct. at 953; *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

 Pursuant to the Tucker Act, the United States may be sued in this court in any action founded upon "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (1982). Transfer of this case to the United States Claims Court from the district court does not, in and of itself, result in jurisdiction. *Berdick v. United States,* 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979). The claim stated in the complaint must fall within the specific categories enumerated by the Tucker Act or the claim must be dismissed. *Aetna Casualty & Sur. Co., Inc. v. United States,* 228 Ct.Cl. 146, 150–51, 655 F.2d 1047, 1051 (1981).

 The plaintiff and the intervenors concede that their contracts are with the Topeka Housing Authority, and not with the United States. The plaintiff, however, points to HUD's authority over the subject contracts and its funding of the subject program through the Topeka Housing Authority as the basis for why jurisdiction is appropriate in this contract case. Unfortunately for the plaintiff, their theory provides an insufficient basis on which to ground this court's jurisdiction. Under the Tucker Act, the United States consents to be sued only by those with whom it has privity of contract. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550–51 (Fed.Cir.1983). The plaintiff must provide "evidence of the existence of some type of contract between it and the United States," or it cannot sue and recover directly from the United States. *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973). Moreover, in *Aetna Casualty & Surety Co.,* the court squarely addressed the question raised in the instant case when it wrote: "It is well-settled, however, that where the United States does not make itself a party to the contracts which implement important national policies, no express or implied contracts result between the United States and those who will ultimately perform the work." *Aetna Casualty & Sur. Co., Inc.,* 228 Ct. Cl. at 152, 655 F.2d at 1052.

 HUD's imposition of regulations and restrictions on the use of the funds it provided to the Topeka Housing Authority does not alter the rules. *Cofan Associates., Inc. v. United States,* 4 Cl.Ct. 85, 86 (1983). Whereas in certain business relationships between private parties, intimate involvement in the contract might sometimes result in a conclusion that a contract is implied in fact, such is not the case against the United States, acting as sovereign, when, as here, it is precisely "the sovereign nature of the acts [which] insulates the United States from liability." *Aetna Casualty & Surety Co., Inc.,* 228 Ct.Cl. at 153, 655 F.2d at 1053. The purposes of the Moderate Rehabilitation Program is to upgrade substandard rental housing and to provide rent subsidies for

lower-income families, 24 C.F.R. § 882.-401(a), thus promoting the general welfare of the nation. Therefore, by funding and regulating the Moderate Rehabilitation Program, the United States "is acting in its role as a sovereign and the moneys promised are gifts or gratuities which do not establish any contractual obligation, express or implied, on the part of the United States." *Marshall N. Dana Constr., Inc. v. United States*, 229 Ct.Cl. 862, 864, 1982 WL 26554 (1982).

█ It is uncontroverted that the United States is not an express party to the contracts between the plaintiff and intervenors and the Topeka Housing Authority. The signatories are the plaintiff, the intervenors, and the Mayor of Topeka. This court's predecessor has established that, if the United States is not a named party to a contract, jurisdiction cannot be asserted against it as a party unless the person entering into the contract was acting within the scope of his authority to bind the United States. *Porter v. United States*, 204 Ct.Cl. 355, 360, 496 F.2d 583, 587 (1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975); *D.R. Smalley & Sons, Inc. v. United States*, 178 Ct.Cl. 593, 598, 372 F.2d 505, 508, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967).

Moreover, under the applicable statute, 42 U.S.C. § 1437f, the Secretary of HUD is authorized to enter into annual assistance contracts under the program with either a local housing authority or individual program participants, depending on the relevant circumstances. In the plaintiff's case, HUD made a conscious choice to enter into a contract with the Topeka Housing Authority, rather than directly with the plaintiff. Therefore, even if the Topeka Housing Authority had purported to act on behalf of the United States, or had attempted to bind it, the Topeka Housing Authority's action still could not have operated to make the United States a party and, thus, would fail to confer jurisdiction on this court. *Federal Crop Ins. Corp. v. Merrill*, 332

U.S. 380, 383, 68 S.Ct. 1, 2, 92 L.Ed. 10 (1947). Furthermore, HUD should not be involuntarily forced into a contractual relationship with the plaintiff. HUD's statutory, regulatory and contractual control over the use of funds provided for the program to the Topeka Housing Authority does not convert the Topeka Housing Authority into an agent of the United States, with the authority to contractually bind the sovereign.[12] This court has recognized that "it is both appropriate and necessary in disbursing federal grant funds that the federal government establish standards and requirements for projects...." *DeRoche v. United States*, 2 Cl.Ct. 809, 812 (1983).

There are numerous cases involving lower income housing programs in which this court and its predecessors have applied the lack of privity rationale, regardless of HUD's dominant control and supervision of every phase of a housing project. *See, e.g., Penn Towne Builders, Inc. v. United States*, 4 Cl.Ct. 677, 682 (1984); *H.A. Ekelin & Associates v. United States*, 225 Ct.Cl. 561, 563, 650 F.2d 289 (1980); *Correlated Development Corp. v. United States*, 214 Ct.Cl. 106, 117–18, 556 F.2d 515, 522–23 (1977). "[I]t is well settled in this Court that a local authority does not become an agent of the federal government due to a federal agency's control and supervision of grant funds." *DeRoche*, 2 Cl.Ct. at 812 (citing *D.R. Smalley & Sons, Inc. v. United States*, 178 Ct.Cl. 593, 597–98, 372 F.2d 505, 507–08, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967); *Somerville Technical Servs., Inc. v. United States*, 226 Ct.Cl. 291, 295–300, 640 F.2d 1276, 1279–81 (1981); *Housing Corp. of Am. v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972)). In sum, the breach of contract claim in the instant case fails because the contracts between the plaintiff and the intervenors and Topeka Housing Authority cannot serve as a basis for invoking this court's government contract jurisdiction.

---

12. *See,* 42 U.S.C. § 1437f(b), (c), (e); 24 C.F.R. § 882.104, .201, .403; Annual Contributions Contract, No. KC–1155–K, Part I, §§ 1.2, 1.4, 1.6.

It is now clear that parties such as the plaintiff, which contract with parties other than the federal government, *i.e.*, with a state or private party ... and which later sue the United States on the theory that it was the real party-in-interest, cannot recover against the United States. *Penn Towne Builders, Inc.*, 4 Cl.Ct. at 682 (citing *D.R. Smalley & Sons, Inc.*, 178 Ct.Cl. 593, 372 F.2d 505).

## II. *Unlawful Taking Claim*

■ In the Complaint, the plaintiff also alleges that HUD's actions constitute a wrongful taking of the plaintiff's property, giving rise to a claim "founded upon the Constitution." We find no such valid claim to be present in the case at bar.

■ In order to assert a valid claim under the takings clause of the fifth amendment, the plaintiff must demonstrate a private property interest taken for public use. *Prevado Village Partnership v. United States*, 3 Cl.Ct. 219, 228 (1983). The plaintiff has failed to describe what he believes his private property interest to be in this case. But, even assuming, for arguments sake, that he may have met the contractually created expectation of the initial Contract Rents amount, the Court of Claims earlier concluded that "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." *Sun Oil Co. v. United States*, 215 Ct.Cl. 716 at 770, 572 F.2d 786 at 818 (1978); *see also, Chevron Chemical Corp. v. United States*, 5 Cl.Ct. 807, 811 (1984). "In such instances, interference with such contractual rights generally give rise to a breach claim not a taking claim." *Sun Oil Co.*, 215 Ct.Cl. at 770, 572 F.2d at 818.

## III. *Tort Claim*

The intervenors allege further that the United States has "tortiously interfered with the lease relationship" between the plaintiff and the intervenors. Tort based claims, however, are also not within the jurisdiction of this court. *See* 28 U.S.C. § 1491(a)(1).

## IV. *Equitable Lien–Unjust Enrichment Claim*

■ Last, the plaintiff looks to a line of cases based upon equitable theories of recovery to find support for his claim. After conceding that the majority position requires that the United States be a signatory to a contract before a suit against the United States for breach of contract properly can be filed, the plaintiff tries to rely upon dicta from a case which advocates an equitable based theory: "A court of equity has the power to forestall a cosmetic fraud based on the niceties of the contractual arrangement constructed by HUD, and to avoid unjust enrichment from the services rendered." *Trans–Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 382 (D.C.Cir.1976).

A claim based on equitable lien-unjust enrichment "proceed[s] from a perception that a party *ought* to be bound rather than a conclusion that a party has *agreed* to be bound." *Aetna Casualty & Sur. Co., Inc.*, 228 Ct.Cl. at 164, 655 F.2d at 1059; *see also, Cleveland Chair Co. v. United States*, 214 Ct.Cl. 360, 364, 557 F.2d 244, 246 (1977). Plaintiff's equitable lien-unjust enrichment theory of recovery is, therefore, based upon a contract implied in law, over which this court has not been given jurisdiction. *Aetna Casualty & Sur. Co., Inc.*, 228 Ct.Cl. at 164, 655 F.2d at 1059–60; *see, e.g., Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 674, 428 F.2d 1241, 1255–56 (1970).

■ Plaintiff's attempted reliance upon *Trans–Bay Engineers* and related cases does not alter our conclusion that this court lacks jurisdiction in the above captioned case. In those cases, suit was brought against the Secretary of HUD using the limited waiver of sovereign immunity provided by 12 U.S.C. § 1702, and founding jurisdiction upon various statutes applicable only to district court litigation, such as 28 U.S.C. § 1331 and § 1332. Once jurisdiction is proper, the federal district court may apply a variety of substantive theo-

ries, including those based solely on equitable considerations. *Aetna Casualty and Surety*, 228 Ct.Cl. at 164–65, 655 F.2d at 1060 (citing *Trans–Bay Engineers & Builders*, 551 F.2d at 378–82). This court must determine whether the instant claim is within the narrow jurisdictional confines of the Tucker Act, and, as a claim founded solely on equitable considerations, is beyond the reach of that statute. This court is unable to entertain such a suit. "Thus, regardless of the *substantive* application of equitable concerns in *Trans–Bay Engineers* and related cases to allow recovery, we must nevertheless conclude that there is no jurisdiction in this court over petitions stating such claims." *Aetna Casualty & Sur. Co., Inc.*, 228 Ct.Cl. at 165, 655 F.2d at 1060.

## V. Request for Retransfer

■ The intervenors request the retransfer of this case back to the United States District Court for the District of Kansas, based on the theory that this case is an equitable action for specific relief under *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Although this court finds that the language of the *Bowen* Opinion offers little specific guidance on the jurisdictional issues presented to this court, as is discussed more fully below, the court concludes that retransfer is inappropriate because, in the opinion of this court, *Bowen* will not support jurisdiction in this case in the United States District Court and does not alter that court's original decision that it did not have jurisdiction.

As discussed above, the plaintiff's theory of recovery based on equitable lien-unjust enrichment is beyond the jurisdiction of this court. A number of federal circuits, however, have found merit in similar claims. *E.g., Trans–Bay Engineers & Builders*, 551 F.2d 370; *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Dev. Fund Co.*, 608 F.2d 28 (2d Cir.1979); *Industrial Indem., Inc. v. Landrieu*, 615 F.2d 644 (5th Cir.1980); *contra Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co.*, 595 F.2d 1126 (9th Cir.1979); *United States v. Adams*, 634 F.2d 1261 (10th Cir.1980); *Portsmouth Redevelopment & Housing Authority v. Pierce*, 706 F.2d 471 (4th Cir. 1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Carlyle Gardens Co. v. Delaware State Housing Authority*, 659 F.Supp. 1300 (D.Del.1987). The range of legal issues in these various cases is broad, and no consensus exists as to whether the instant case would meet the jurisdictional requirements of the district court. A pivotal question, for example, has been whether the suit at issue can be construed as against the Secretary of HUD and not as against the United States.[13]

---

**13.** In *Trans–Bay Engineers,* the circuit court relied for jurisdiction upon the waiver of sovereign immunity in 12 U.S.C. § 1702 (1976), which provides that, in carrying out certain enumerated functions under the National Housing Act, the Secretary of HUD may "sue and be sued in any federal court of competent jurisdiction, State or Federal." *Trans–Bay Engineers & Builders,* 551 F.2d at 376. The question of whether the suit is against the Secretary of HUD or against the United States could depend upon whether recovery on the claim would come from funds in the control of HUD, severed from Treasury funds and Treasury control, or would come from general Treasury revenue. *Falls Riverway Realty, Inc., v. Niagara Falls,* 754 F.2d 49, 55–56 (2d Cir.1985). In the latter case, the suit in reality is against the United States. *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947). On the parameters of this determination, the circuits are split. *See United States v. Adams,* 634 F.2d 1261 (10th Cir.1980); *Ippolito–Lutz, Inc. v. Harris,* 473 F.Supp. 255

(S.D.N.Y.1979); *S.S. Silberblatt, Inc.,* 608 F.2d at 28. *But see Marcus Garvey Square, Inc.,* 595 F.2d at 1126; *DeRoche,* 2 Cl.Ct. at 809.

In *United States v. Adams,* a Tenth Circuit case, the successor in interest to a building contractor sued HUD for breach of contract to recover damages the contractor had suffered in the performance of its contract with the local housing authority. The court, in discussing the waiver of sovereign immunity by HUD under 42 U.S.C. § 1404a, found that the waiver, which is applicable "only with respect to [HUD] functions under this chapter," did not apply because the payment of damages for alleged contractual breaches arising out of an approved contract does not fall within the "functions" of HUD in making housing available. *United States v. Adams,* 634 F.2d at 1265. "Had HUD failed to pay [the contractor] a portion of the monies allocated for the project, we agree that HUD would be subject to suit in relation to those funds committed to the project under § 1404a." *Id.* The court in *United States v. Adams* ulti-

The defendant points to the law-of-the-case doctrine as a bar to retransfer. This doctrine " 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (dictum)). This is, however, merely an expression of the practice of courts generally to refuse to reopen what has been decided. *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178 (citing *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178 (quoting *Arizona v. California*, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8). In the instant case, the United States District Court for the District of Kansas has already issued an Order finding it lacked jurisdiction and that the plaintiff's claim "might" be within the exclusive jurisdiction of the United States Claims Court.

Unfortunately for the plaintiff and the intervenors, the latter's unsupported claim that they can fit their case under the *Bowen* umbrella and obtain relief from the United States District Court is, in the opinion of this court, incorrect. The *Bowen* court dealt with the question of whether a district court had jurisdiction to entertain an action brought by a state for review of a final order of a cabinet member refusing to turn over monies in his capacity as the head of a cabinet agency, pursuant to a federal grant-in-aid program. The critical difference in the instant case from *Bowen* is that in the case at bar, in addition to the annual contribution contract entered into

by the Topeka Housing Authority and HUD, the Topeka Housing Authority also then executed two agreements to enter housing assistance payment contracts with the plaintiff and with the intervenors and then executed two housing assistance payment contracts for the units. Therefore, in the case before this court, there is truly no contract between the plaintiff and intervenors and any entity of the federal government. The intervening contracts, between the plaintiff and the intervenors on one side and the Topeka Housing Authority on the other, still bars the plaintiff and the intervenors from suing the federal government under the privity of contract requirement, especially in view of the district court's previous finding that it lacked jurisdiction to entertain plaintiff's suit.

## CONCLUSION

For the reasons discussed above, the court, hereby, GRANTS the defendant's Motion to Dismiss.

IT IS SO ORDERED.

---

mately upheld the district court Opinion, which found that the United States Court of Claims

had exclusive jurisdiction of the case.