CAPITOL BOULEVARD PARTNERS,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–263C.

United States Court of Federal Claims.

Aug. 26, 1994.

William M. Leech, Nashville, TN, for plaintiff.

James W. Poirier, Washington, DC, with whom was Terrance S. Hartman, Asst. Director, David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., and Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, for defendant. Howard Schmeltzer, Dept. of Housing and Urban Development, was of counsel.

## OPINION

SMITH, Chief Judge.

This case involves a contract bid between plaintiff Capitol Boulevard Partners and the Department of Housing and Urban Development for participation in the Moderate Rehabilitation Housing Program. This opinion addresses defendant's motion to dismiss and plaintiff's motion to transfer to the United States District Court. After careful consideration of the briefs filed by the parties and after oral argument, the court grants defendant's motion to dismiss and denies plaintiff's motion to transfer.

## FACTS

In 1987, the Department of Housing and Urban Development (HUD) allocated Moderate Rehabilitation Housing Program (MRP or Program) subsidies to the local housing authority, the Nashville Metropolitan Development and Housing Agency (NMDHA). NMDHA then issued a request for proposals for a MRP project.

Plaintiff, Capitol Boulevard Partners (Capitol) submitted a proposal to the NMDHA. The contract was awarded to the only other bidder on the project, Westside Apartments, Ltd. (Westside). Capitol asserts that Deborah G. Dean, executive assistant to the Secretary of HUD, and Thomas T. Demery, Assistant Secretary for Housing, purposely structured the MRP allocation to NMDHA to conform precisely to the total number of

units and specific bedroom mix they knew would be submitted by Westside. Capitol argues that the HUD officials' actions made it impossible for them to have been awarded the contract.

HUD's inspector general conducted an investigation pursuant to law and determined that during the time period in question HUD had breached its duty to administer the MRP in accordance with its own regulations. Capitol maintains that HUD concealed the noncompetitive nature of the NMDHA allocation, and Capitol has brought suit against the United States to recover its bid proposal costs for HUD's alleged breach of the implied duty to consider fairly and honestly its bid.

Capitol filed this action against the United States acting through HUD to recover the bid preparation expenses it incurred in its unsuccessful bid. Defendant subsequently filed a motion to dismiss the case for lack of subject matter jurisdiction. The motion was briefed by the parties and this court heard oral argument on this motion and plaintiff's subsequent motion to transfer the case to the district court for a trial upon the merits.

## DISCUSSION

### I. Defendant's Motion to Dismiss

Pursuant to Rule 12(b)(1) and (h)(3), defendant requests that the court dismiss the complaint upon the ground that this court does not possess jurisdiction to entertain the claim due to plaintiff's lack of privity of contract with the government. Under the Tucker Act, 28 U.S.C. § 1491, the United States consents to be sued upon contract claims only by those parties with whom it is in privity. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1557 (Fed.Cir.1983); *Etchey v. United States,* 15 Cl.Ct. 152, 153–54 (1988).

### A. Lack of implied-in-fact contract

■ Plaintiff contends that the "HUD officials [breached] the government's implied contract to evaluate [its] proposal and provide it fair and honest consideration...." Complaint para. 12. However, defendant argues that no contractual relationship existed

between plaintiff and the government, but rather plaintiff's implied-in-fact contract was with the local public housing authority, the NMDHA, if anyone. "[T]he government's involvement in the financing and supervision of a contract between a public agency and a private contractor does not create a contract between the government and the contractor, for the breach of which the contractor may sue the government." *New Era Construction v. United States,* 890 F.2d 1152, 1155 (Fed.Cir.1989), *reh'g denied* (Fed.Cir.1990). In *New Era* HUD's Board of Contract Appeals did not have jurisdiction over the contractor's claim on the basis that HUD approved a turnkey contract between the contractor and the housing authority, funded the contract through an annual contributions contract between HUD and the housing authority, and had authority over aspects of construction and operation of the housing. The United States does not making itself a party to the contracts relating to projects it subsidizes for the public betterment, but instead, the United States obligates itself by separate agreements to local authorities to fund projects it approves. *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972). "[W]here the United States does not make itself a party to the contracts which implement important national policies, no express or implied contracts result between the United States and those who will ultimately perform the work.... [This doctrine has been applied] in a variety of circumstances where Government agencies (including HUD) use other entities to contract for the general welfare, notwithstanding the Government's intimate involvement with all stages of a project." *Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. 146, 152–53, 655 F.2d 1047, 1052–53 (1981). While philosophical objections might be raised to this system, it is clear that it is the legal system under which HUD programs have operated. This court, of course, is bound by this body of law.

■ Plaintiff further argues that in its effort to conceal its preselection of the competing bidder Westside, HUD assumed NMDHA's responsibilities under the regulations. Plaintiff maintains that because HUD

dictated what the public housing authority did and could do, HUD owed a contractual duty implied-in-fact to every bidder who responded to the request for proposals to insure that those proposals were fairly and honestly considered. Plaintiff, however, has no authority to back up this creative argument.

Plaintiff contends, in the alternative, that if no implied-in-fact contract existed with HUD, then its "claim is founded upon [HUD's] breach of its own regulations and is for damages not sounding in tort." Pl.Br. at 4, 7–10. However, this court does not possess jurisdiction to entertain such a claim based upon a violation of HUD's regulations because these regulations are not "money-mandating." The right to money damages must be made with specificity and unequivocally expressed. *United States v. Testan,* 424 U.S. 392, 401, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976). Upon review of the MRP statute and HUD's implementing regulations, neither are a "money mandating" provision but rather authorization to enter contracts and granting money damages for breaches of express contractual provisions.

The court refused to find privity in a similar case, *Eubanks v. United States,* 25 Cl.Ct. 131 (1992). In *Eubanks,* plaintiff lessee was approved as a property owner under MRP. They entered into agreements with the Topeka Housing Authority (THA) for housing assistance payment contracts. When HUD determined that the contract rents were inflated, it directed THA to reduce all subsequent monthly housing assistance payments and to recapture all excess payments already expended. Plaintiffs contended that HUD's decision constituted a breach of contract. The court found a lack of privity, "regardless of HUD's dominant control." *Id.* at 138.

## B. NMDHA is not an agent of the United States

HUD's grant of funds and even extensive supervision over NMDHA is not sufficient to create an agency relationship that would establish privity of contract between plaintiff and the government. HUD's statutory authority under the Program is limited to entering into contracts with local public housing authorities. There is no contractual relationship with the bidders or contractors. It is well-established that HUD's grant of funds does not establish an agency relationship, even if the local public housing authority is nothing more than a conduit for federal funds. *See e.g., Housing Corp. of America,* 199 Ct.Cl. at 710, 468 F.2d at 924; *Correlated Development Corp. v. United States,* 214 Ct. Cl. 106, 112, 556 F.2d 515, 522 (1977); *Marshall N. Dana Constr. v. United States,* 229 Ct.Cl. 862, 862–64, 1982 WL 26554 (1982). Also, federal approval of the expenditure of such funds does not create an agency relationship. *Correlated Development Corp.,* 214 Ct.Cl. at 113, 556 F.2d at 519; *Somerville Technical Serv. v. United States,* 226 Ct.Cl. 291, 297–99, 640 F.2d 1276, 1280 (1981). While it could well be argued that this situation is either unfair or has the potential for unfairness, the law and precedent in this area is quite clear.

Furthermore, even if there was an agency relationship between the government and NMDHA, there is no implied-in-fact contract between bidder and government outside a typical procurement situation. *Tree Farm Development Corp. v. United States,* 218 Ct. Cl. 308, 317–18, 585 F.2d 493, 498–99 (1978). In the instant case, plaintiff's submission of a proposal in response to NMDHA's advertisement for the MRP is not a procurement situation. Under the MRP, the government does not procure any property or services for its direct use, rather it provides funding to owners so they can improve their property. This contract comes under the category of "basically grant or sociological type contracts designed to accomplish government social policy goals . . . ." *Busby School of Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 596, 600 (1985). Therefore, plaintiff is unable to establish any legal basis for this court to entertain its claim for recovery of proposal preparation costs.

Plaintiff relies heavily on *Heyer Products Company v. United States,* 135 Ct.Cl. 63, 140 F.Supp. 409 (1956), which held that recovery can be had where "bids were not invited in good faith, but as a pretense to conceal the purpose to let the contract to some favored bidder." *Id.* at 71, 140 F.Supp. 409. Recog-

nizing that this recovery has been limited to procurement situations, plaintiff argues that the MRP is a "quasi-procurement" program where plaintiff is providing a service to the government in furtherance of the government's policies. In this case, plaintiff argues the policy of the MRP is to provide affordable housing to low income families. However, the court views such a categorization as merely a semantic distinction.

Plaintiff also argues that in *Tree Farm,* the court implied that in cases of arbitrary and capricious conduct by the government, the *Heyer* rule could be extended beyond the classic procurement situation. *Tree Farm,* 218 Ct.Cl. at 318. Although such conduct was not found in *Tree Farm,* plaintiff maintains that such arbitrary conduct is clearly evident here. The court, however, does not interpret *Tree Farm* to extend beyond procurement situations if arbitrary and capricious conduct has occurred, but rather sees such actions as one reason to apply the protection of the *Heyer* rule in procurement situations. Therefore, even if the court were to find that HUD acted arbitrarily, that alone is not sufficient to apply the *Heyer* rule absent a procurement situation.

*II. Plaintiff's Motion to Transfer*

■ Plaintiff argues that if the court determines that it does not have subject matter jurisdiction, it should transfer this case, pursuant to 28 U.S.C. § 1631 (1982) and in the interests of justice, to the United States District Court for the Middle District of Tennessee for a trial upon the merits.

To cure a lack of jurisdiction, 28 U.S.C. § 1631 allows federal courts to transfer cases to a court in which the action could have been initially filed. Plaintiff maintains that the United States has waived its sovereign immunity under 42 U.S.C. § 1404a,[*] the district court has federal question jurisdiction over the subject matter under 28 U.S.C. § 1331(a), and that it has a claim for relief recognized by federal common law. Plaintiff cites *Trans–Bay Engrs. & Builders, Inc. v. Hills,* 551 F.2d 370, 377 (D.C.Cir.1976), which

stated that what governs the rights of the parties "is not only the contracts they hold, but also the responsibilities of HUD, not limited to contracts signed by HUD, but including responsibilities and duties generated by its activities in furtherance of the Housing Act, including the sponsorship and prescription of contracts signed by others." *Id.* at 377.

However, the court finds that sovereign immunity has not been waived here. Neither HUD statutes nor regulations authorize direct HUD involvement in the bidding process, therefore, an action based upon these unauthorized functions is barred. *United States v. Adams,* 634 F.2d 1261, 1264 (10th Cir.1980); *Little Earth of United Tribes, Inc. v. HUD,* 584 F.Supp. 1292 (D.Minn.1983). *Trans–Bay,* which plaintiff cited as precedent, is factually different from the instant case because there the plaintiff's allegations fell squarely within the statutory scheme and involved construction services actually performed, which is not the case here.

■ Furthermore, the "sue and be sued" waivers of sovereign immunity, like section 1404a, only apply to suits against the specific agency or official whose immunity is waived and have no application to the United States generally. Only funds in the hands of HUD can be reached. *W.P. Bill Atkinson Enterprises v. United States,* 228 Ct.Cl. 886, 888, 1981 WL 21520 (1981). Therefore, cases in which a monetary recovery would come from general appropriations of the United States Treasury, and not special "severed" HUD funds, cannot be heard in a district court. *Taylor v. Administrator of SBA,* 722 F.2d 105, 108 (5th Cir.1983).

### CONCLUSION

Based on the foregoing, the court grants defendant's motion to dismiss and denies plaintiff's motion to transfer.

**IT IS SO ORDERED.**

---

[*] 42 U.S.C. § 1404a reads in relevant part: "The Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under this chapter and sections 1501 to 1505 of this title." *See Ippolito–Lutz, Inc. v. Harris,* 473 F.Supp. 255, 259 (S.D.N.Y.1979).