**FOXGLENN INVESTORS LIMITED PARTNERSHIP**

v.

**HOUSING AUTHORITY FOR PRINCE GEORGE'S COUNTY, et al.**

**Civ. A. No. WN–93–73.**

United States District Court,
D. Maryland.

Aug. 9, 1993.

Memorandum and Order Dec. 23, 1993.

David M. Sheehan, Charles J. Morton, Jr., and Kollman & Sheehan of Baltimore, MD, for plaintiff.

Samuel Y. Botts, and Jessamy, Fort & Botts of Washington, DC, for defendant Housing Authority for Prince George's County.

Lynne A. Battaglia, U.S. Atty., and Julliette Eurick, Asst. U.S. Atty. for District of Maryland; of counsel Steven Goldstein, U.S. Dept. of Housing and Urban Development of Washington, DC; and Judry L. Subar, and Andrea M. Sharrin, and Felix Baxter, of the U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants Cisneros and Kemp.

## MEMORANDUM

NICKERSON, District Judge.

The following motions currently are pending before the Court: (1) Defendant's Motion to Dismiss (Paper No. 19); (2) Plaintiff's Motion for Partial Summary Judgment (Paper No. 24). Both motions are opposed, and replies have been filed. After reviewing the motions and the applicable case law, the Court concludes that no hearing is necessary (Local Rule 105.6). The Court further determines that Defendant's motion should be denied and Plaintiff's motion for partial summary judgment should be granted.[1]

## BACKGROUND

This case involves the calculation of rents for subsidized housing units under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f. Section 8 contains several programs for providing housing assistance payments to low income persons. The program at issue in the instant case is the Moderate Rehabilitation Program ("Mod Rehab").[2] A review of the Mod Rehab program is useful to understanding the context of this case. The overview will be followed by the facts specific to this action and a summary of Plaintiff's complaint and the pending motions.

### A. *The Mod Rehab Program*

Under the Mod Rehab program, the Department of Housing and Urban Development ("HUD") provided funding for housing

---

1. Two additional motions also are pending before the Court, Plaintiff/Counter-Defendant's Motions to Dismiss Counterclaim (Paper No. 16) and For More Definite Statement (Paper No. 17). As discussed more fully below, the countercomplaint will be dismissed in light of the Court's ruling with respect to Counts I and II of the complaint. Accordingly, these motions will be denied as moot.

2. The government states that HUD essentially discontinued this program in 1990.

assistance payments to local public housing authorities ("PHAs"). The PHA would then enter into contracts with owners who would agree to rehabilitate existing housing units for rent to low income persons in exchange for housing assistance payments from the PHA.

Prior to renovating the units, the PHA and the owner would enter into an Agreement to Enter into Housing Assistant Payments Contract ("AHAP"). The AHAP contained the relevant information regarding the proposed rehabilitation, as well as the initial "contract rent" for the units and the amount of the rental subsidy applicable to each unit. The amount of the subsidy was determined by the difference between the contract rent and the amount of rent the tenant is required to pay.

Once the rehabilitation was completed, the owner and the PHA executed a Housing Assistance Payment ("HAP") contract. The HAP contract incorporated the terms of the AHAP and also contained initial contract rents for the units, which "are subject to post-audit and change in accordance with HUD requirements, including correction of errors in computation." HAP Contract, ¶ 1.5.

## B. The Facts of this Case

Plaintiff Foxglenn Investors Limited Partnership ("FGI") participated in the Mod Rehab program in 1987. It entered into an AHAP agreement with Defendant Housing Authority of Prince George's County ("HAPG")[3] to renovate the Foxglenn Apartment complex in Seat Pleasant, Maryland. After the renovations were completed, FGI and HAPG executed a fifteen-year HAP contract that set the contract rents. HAPG obtained funding for the housing subsidies from HUD, but it is undisputed that there was no contractual relationship between HUD and FGI.

In 1992, HUD conducted an audit of the HAP contract and determined that the initial contract rents had been set too high. HUD demanded that HAPG implement rent rollbacks to adjust the rents to what HUD believed to be the proper levels and to recoup alleged overpayments under the HAP contract. HAPG originally protested this action and appealed the decision through HUD channels. The appeals were denied, and rent rollbacks were scheduled to go into effect in January, 1993. FGI filed the instant complaint in January and requested a temporary restraining order and preliminary injunction to prevent the rent rollbacks. The parties later stipulated that no rollbacks would take effect while this litigation was pending, and FGI withdrew its motions. Thus, this Court never ruled on FGI's requests.

## C. Summary of FGI's Complaint and the Pending Motions

FGI's complaint contains three counts against the Secretary of HUD, Henry Cisneros.[4] Count I is a mandamus count. FGI seeks an order mandating Cisneros to comply with § 142(d) of the Housing and Community Development Act of 1987, which FGI contends prohibits the rent rollbacks at issue in this case. Count II alleges that Cisneros' actions are contrary to law, and therefore, violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. Count III is an equitable estoppel claim against Cisneros and HAPG alleging that Defendants are estopped from rolling back rents because they have waited too long to conduct an audit of the initial contract rents.[5]

HUD moves to dismiss this action for several reasons. HUD argues that this Court lacks subject matter jurisdiction over the claims against Cisneros, that it has statutory and regulatory authority to reduce the rents

---

3. HAPG was substituted for the original Defendant, Prince George's County Department of Housing and Community Development, on February 18, 1993. Paper No. 14.

4. Cisneros was automatically substituted for former HUD Secretary Jack Kemp. Fed.R.Civ.P. 25(d).

5. FGI also brings two counts solely against HAPG. In Count IV, for breach of contract, FGI asserts that HAPG breached the HAP contract by failing to implement appropriate rent increases and by attempting to roll back the initial contract rents. Count V alleges that HAPG is prohibited from reducing the initial contract rents under the doctrine of laches.

at issue, and that the government is not subject to the equitable estoppel claim.

FGI disputes all of HUD's arguments, arguing that the constitution, the Section 8 statute, and HUD's regulations, as well as the terms of the HAP contract itself, prevent HUD from reducing the rents. FGI also argues that the government is subject to equitable estoppel under the circumstances of this case. FGI moves for summary judgment on Counts I and II (Mandamus and APA claims), on the basis of the same arguments advanced in opposition to HUD's motion.

The Court determines that it has subject matter jurisdiction over FGI's claims against Cisneros. It further determines that FGI's interpretation of the relevant statute and regulations is correct.[6] Accordingly, HUD's motion to dismiss will be denied and FGI's motion for partial summary judgment will be granted with respect to Counts I and II. Because the Court rules in FGI's favor on the Mandamus and APA claims, the equitable estoppel claim is now moot.

### LEGAL STANDARD

■ A motion made pursuant to Fed. R.Civ.P. 12(b)(6) allows a claim to be dismissed for failure to state a claim upon which relief can be granted. The purpose of a motion under Rule 12(b)(6) is to test the legal sufficiency of the statement of the claim. *Chertkof v. Baltimore*, 497 F.Supp. 1252, 1258 (D.Md.1980). The standard for a motion to dismiss is well known: a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Faulkner Advertising Assoc. v. Nissan Motor Corp*, 905 F.2d 769, 771–72 (4th Cir.1990). For the purposes of ruling on a motion under Rule 12(b)(6), the Court must accept the allegations contained in the complaint as true, and must liberally construe the complaint as a whole. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Finlator v. Powers*, 902 F.2d 1158 (4th Cir.1990).

Summary judgment, by contrast, is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2552. (citations omitted).

■ If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir.1986)). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82

---

6. Because the Court rules in FGI's favor concerning the Section 8 statute and regulations, it

does not reach the other arguments raised by FGI.

S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam).

## ANALYSIS

Three district courts have already addressed the precise issues raised in the instant case, and all three have ruled in favor of the owners of the housing units. *Terrace Housing Associates, Ltd. v. Kemp,* Case No. CIV 92–786–T (W.D.Okla. June 10, 1992); *Linden Housing Associates, Ltd. v. Cisneros,* CV–N–92–358–HDM (D.Nev. Feb. 11, 1993); *Rolling Green Housing Associates v. Kemp,* CIV–92–1372–T (W.D.Okla. May 11, 1993). In each of these cases, HUD raised arguments substantially similar, if not identical, to those raised in the instant case. This Court has considered the reasoning of the three decisions and HUD's arguments to the contrary. The Court is persuaded by and relies substantially on the analysis provided in *Terrace Housing, Linden Housing,* and *Rolling Green.* The reasoning of these decisions and the arguments presented by the parties are discussed below.

### A. Subject Matter Jurisdiction

█ HUD first notes what it characterizes as the potential jurisdictional "infirmity" of Plaintiff's claims. According to HUD, the United States Court of Federal Claims (until late 1992 known as the United States Claims Court) has exclusive jurisdiction over this action because it is essentially an action for money damages against the federal government. HUD raised this precise argument in another action seeking declaratory, injunctive, and mandatory relief to prevent rent rollbacks under the Mod Rehab program in *Terrace Housing Associates, Ltd. v. Kemp,* Case No. CIV 92–786–T (W.D.Okla. June 10, 1992). The unpublished decision in that case persuasively explains four reasons why subject matter jurisdiction is proper in the district court.

█ First, the court cited *Eubanks v. United States,* 25 Cl.Ct. 131 (1992), for the proposition that jurisdiction in the Court of Federal Claims was lacking because there was no contractual privity with HUD. Slip op. at 6. In *Eubanks,* the Court of Federal Claims determined that it does not have jurisdiction over claims against HUD to prevent rent rollbacks under Section 8 unless there is contractual privity between the plaintiff and HUD. 25 Cl.Ct. at 138. As the court in *Eubanks* explained, the Tucker Act, 28 U.S.C. § 1491, is a limited waiver of sovereign immunity that allows the Court of Federal Claims to hear breach of contract actions against the United States. 25 Cl.Ct. at 137. Under 42 U.S.C. § 1437f, however, HUD is not required to contract directly with the owner. HUD contracts with the PHA, which then contracts with the owner or developer of the housing units. *Id.* at 138. Accordingly, in the absence of contractual privity between the owner and HUD, the Court of Federal Claims lacks jurisdiction to hear the claims. *Id.*[7]

The Court of Federal Claims also lacks jurisdiction because it cannot grant the equitable relief sought by Plaintiff. This point also was raised in *Terrace Housing.* The court, citing *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), explained the difference between equitable relief that incidentally results in the payment of money and "money damages" in the sense of compensation for an injury to the plaintiff's person or property. Slip op. at 6–7. Although granting the plaintiff's request for equitable relief might result in payments in the form of housing subsidies, the claim was not a disguised request for money damages and did not constitute "a ruse to avoid the Claims Court's contract jurisdiction" because the plaintiff was seeking "specific relief that is prospective in nature, and not within the jurisdiction of the Claims Court." *Id.* at 6–7. Accordingly, jurisdiction was proper in the district court.

---

7. HUD cites *National Leased Housing Ass'n v. United States,* 22 Cl.Ct. 649 (1991), in which the Claims Court held that it had jurisdiction over a rent rollback case in which there was no contractual privity between the parties. In that case, however, HUD did not dispute that the Claims Court had jurisdiction at the time the action was filed but argued that the subsequent passage of Section 801 of the HUD Reform Act eliminated Claims Court jurisdiction. *Id.* at 652. The case does not address the issue of contractual privity and holds only that Section 801 did not effect an implied repeal of jurisdiction. *Id.* at 655–58.

The court distinguished one of the cases cited by HUD in the instant case, *Eagle–Picher Indus., Inc. v. United States*, 901 F.2d 1530 (10th Cir.1990), which held that the plaintiff could not avoid the Claims Court's exclusive jurisdiction by framing what was essentially a contract action as a request for equitable relief. The "all-important factor" differentiating *Terrace Housing* from *Eagle–Picher* was the existence of contractual privity between the plaintiff and the government in *Eagle–Picher*. *Id.* at 5.

■ *Terrace Housing's* third and fourth points addressed HUD's claims of sovereign immunity. The court held that 42 U.S.C. § 1404a, which allows suit against the Secretary of HUD under the Housing Act of 1937, constitutes a waiver of sovereign immunity. This is consistent with Fourth Circuit precedent. The Fourth Circuit has determined that, although 42 U.S.C. § 1404a does not confer jurisdiction on a district court, it does waive sovereign immunity for claims against the Secretary of HUD. *Portsmouth Redevelopment & Housing Authority v. Pierce*, 706 F.2d 471, 473–74 (4th Cir.1983), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). This waiver, in combination with the grant of jurisdiction in the mandamus statute, 28 U.S.C. § 1361, gave the district court jurisdiction to entertain the plaintiff's mandamus action. *Terrace Housing*, slip op. at 9–10.

■ Regarding claims pursuant to the APA, *Terrace Housing* also rejected HUD's claim of immunity because the plaintiff sought "an adjudication of whether a violation of federal law has occurred, and 5 U.S.C. § 702 waives sovereign immunity under that circumstance." Slip op. at 10 (citing *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272 (10th Cir.1991)). Because there was no sovereign immunity, the court could exercise general federal question jurisdiction over the claims. *Id.* at 8.

This Court is persuaded by the reasoning of *Terrace Housing* and finds that it has jurisdiction over FGI's claims.

B. *Section 142(d) of the Housing Act of 1937*

■ Section 142(d) of the Housing and Community Development Act of 1987 amended the Housing Act of 1937. Section 142(d) prohibits HUD from rolling back rents under Section 8:

> The Secretary [of HUD] may not reduce the contract rents in effect on or after April 15, 1987, for newly constructed, substantially rehabilitated, or moderately rehabilitated projects assisted under this section (including projects assisted under the section as in effect prior to November 30, 1983), unless the project has been refinanced in a manner that reduces the periodic payments of the owner.

42 U.S.C. § 1437f(c)(2)(C).

Congress enacted this provision in response to HUD's attempts to reduce contract rents under Section 8. H.R.Rep. No. 100–122(I), 100th Cong., 1st Sess. (1987), *reprinted in* 1987 U.S.C.C.A.N. 3317, 3348. After Congress spoke to this issue by amending Section 8, HUD continued to reduce rental payments on some Section 8 housing units. In response, Congress once again amended the statute by adding a requirement that HUD reimburse owners for wrongful reductions in contract rents that occurred after April 14, 1987. In the legislative history to this subsequent amendment, Congress made its intent manifestly clear: "It is the intent of Congress to take away HUD's right to make rent reductions absent a refinancing...." H.R.Rep. No. 100–718(II), 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 4395, 4426.

In this Court's view, the language of the statute unequivocally eliminates HUD's authority to implement rent rollbacks unless refinancing reduces the owner's periodic payments. It is undisputed that FGI has not refinanced its units. Other courts that have addressed this issue have reached the same conclusion. For example, in *Linden Housing Associates, Ltd. v. Cisneros*, CV–N–92–358–HDM (D.Nev. Feb. 11, 1993), the court found in favor of owners of Section 8 Mod Rehab units who were attempting to prevent HUD from rolling back rents by adjusting the initial contract rents that had previously

been approved. The court held that the plain language of § 142(d) prohibited the rent rollbacks, and that Congress' "clear intent . . . was to prohibit the type of action that has been undertaken in this case." Slip op. at 3–4.

Similarly, in *Rolling Green Housing Associates v. Kemp*, CIV–92–1372–T (W.D.Okla. May 11, 1993), a case factually indistinguishable from the instant action, the court found that § 142(d) prevented HUD from rolling back the rents based on the conclusions of an audit team that the initial contract rents had been set too high. "The court cannot conceive a more clear direction from the Congress that rent rollbacks such as those contemplated in this case are prohibited." Slip op. at 4; *see also Terrace Housing*, slip op. at 15–17 (plaintiff established likelihood of success on the merits for purposes of a preliminary injunction to prevent implementation of rent rollbacks based on the language and legislative history of § 142(d)).

HUD argues that § 142(d), when read in the context of the remainder of the statute and HUD's regulations, does not prevent the rent rollbacks at issue. The Court is not persuaded by HUD's position. HUD first contends that the placement of § 142(d) within the statute supports its interpretation that rent rollbacks are permissible. Section 142(d) is codified at 42 U.S.C. § 1437f(c)(2)(C). According to HUD, § 1437f(c)(1), the preceding subsection, governs establishment of initial contract rents. Subsection (c)(2) relates to subsequent adjustments to contract rents but does not have any impact on adjustments to initial contract rents under subsection (c)(1). The government therefore concludes that 42 U.S.C. § 1437f(c)(2)(C), which prohibits rent reductions, must apply only to periodic subsequent adjustments to contract rents. If Congress had intended to prohibit HUD from reducing *initial* contract rents, it would have included the prohibition under subsection (c)(1), not (c)(2).

This argument was expressly rejected in *Terrace Housing*. "While HUD and [the PHA] assert that these provisions [42 U.S.C. § 1437f(c)(2) ] pertain only to annual adjustments to rents under the Act and not to base rents, they offer no explanation as to why, if this was Congress's intent, the added language does not so specify." Slip op. at 17; *accord Rolling Green*, slip op. at 4–5 (HUD's argument that the prohibition does not apply to initial rents, but rather, only to later adjustments, "is a credible one, but in the end, the plain language of the statutory prohibition draws no such distinction."). Moreover, in light of the legislative history indicating that Congress intended "to take away HUD's right to make rent reductions absent a refinancing", the Court cannot conclude that § 142(d) is limited to periodic rent adjustments. 1988 U.S.C.C.A.N. at 4426. This Court once again is in agreement with *Terrace Housing* and *Rolling Green* and rejects HUD's argument based on the placement of the prohibition on rent reductions within the statute.

■■■ HUD next argues that the HAP contract and corresponding regulations allow it to reduce FGI's initial contract rents. The Court finds that these provisions do not give HUD the authority to roll back rents under the circumstances of this case. HUD first relies on regulations found at 24 C.F.R. § 882.408(d).[8] This provision, however, permits adjustment of rents only during the rehabilitation period. As the regulation governing the execution of the HAP contract, 24 C.F.R. § 882.508, explains, at the time the HAP contract is executed, "[t]he Contract Rents may be higher or lower than those specified in the [AHAP] in accordance with the requirements of § 882.408(d)." Considering these two regulations together, the Court finds that § 882.408(d) permits adjustments of the initial contracts rents, as calculated in the AHAP and incorporated into the HAP contract, only during the rehabilitation

---

8. 24 C.F.R. § 882.408 provides as follows:
(d) *Changes in Initial Contract Rents during rehabilitation.* (1) The initial Contract Rents . . . will be the Contract Rents on the effective date of the [HAP] Contract except under the following circumstances: . . .

(v) When necessary to correct errors in computation of the base and Contract Rents to comply with the HUD requirements.

period, but that once the renovations are completed and the HAP contract is executed, § 882.408(d) no longer applies. Consequently, 24 C.F.R. § 882.408(d) cannot be the basis for the rent reductions at issue in this case.

■ Regulations found at 24 C.F.R. § 882.507(c),[9] by contrast, permit a post-audit and rental adjustments based on the results of the audit after the execution of the HAP contract. Nevertheless, the regulation is inapplicable to this case. As the court in *Linden Housing* explained, HUD's post-audit authority under 24 C.F.R. § 882.507(c) is quite limited:

> [T]he scope of HUD's "post-audit" authority is limited to verifying the owner's cost and mortgage loan certifications, and recalculating the contract rents if any material errors are discovered in those certifications. However, this "post-audit" authority is not a grant of plenary power to audit and redo calculations of contract rents based upon alleged errors unrelated to the verification of the owner's cost and mortgage loan certifications.

Slip op. at 4; *accord Rolling Green,* slip op. at 5 (quoting *Linden Housing* ).

HUD argues that *Linden Housing* is inapposite because that case involved HUD's attempt to recalculate rents based on an "alternate methodology" that it could have used originally to calculate initial contract rents in the AHAP and HAP. This reasoning was expressly rejected in *Rolling Green,* which characterized the argument as "a distinction without a difference." Slip op. at 5 n. 6. The regulation limits HUD's post-audit authority to verifying the owner's certifications, and "recalculations based on other criteria . . . are not contemplated" by the regulation. *Id.*

■ In this case, as in *Rolling Green,* HUD is attempting to roll back the initial contract rents based on the results of an audit team's conclusions, not for the reasons permitted by the regulations. Accordingly, the regulations do not authorize the reductions. In addition, even assuming that HUD's interpretation of the regulations were correct, HUD cannot continue to enforce a regulation that is contrary to law. *See, e.g., Regents of the University of California v. Heckler,* 771 F.2d 1182, 1187 (9th Cir.1985) ("[a]gency regulations must be consistent with and in furtherance of the purposes and policies embodied in the congressional statutes which authorize them.") (citation omitted). As the Court already has explained, HUD's authority to reduce Section 8 rents has been all but eliminated by Congress through the enactment of § 142(d).

The Court finds that Defendant Cisneros is obligated to comply with § 142(d) and owes a duty to FGI to so comply. In addition, the rollbacks are in violation of the law, and therefore, must be set aside pursuant to 5 U.S.C. § 706(2). *See Rolling Green,* slip op. at 6 (reaching the same conclusions under virtually identical facts). In light of these conclusions, HUD's Motion to Dismiss will be denied as to Counts I and II of the complaint, and FGI's Motion for Summary Judgment on those counts will be granted.

### C. *Remaining Claims*

The Court's ruling with respect to the effect of § 142(d) on HUD's authority to effectuate rent rollbacks is dispositive of the remaining claims in this action. The estoppel claim in Count III against Cisneros and HAPG is now moot. In addition, FGI and HAPG entered into a stipulation regarding the remaining claims between those parties. FGI and HAPG stipulated that a ruling in favor of FGI on the Motion for Partial Summary Judgment would be dispositive of Counts IV and V of the complaint, as well as

---

**9.** 24 C.F.R. § 882.507 provides as follows:

(c) *Actual cost and rehabilitation loan certifications.* The Owner must provide the PHA with a certification of the costs incurred for the rehabilitation and any temporary relocation as well as the interest rate and term of any rehabilitation loan. The Owner must certify that these are the actual costs, interest rate, and term.

The PHA must review for completeness and accuracy and accept these certifications subject to the right of post audit. The PHA must then establish the Contract Rents as provided in § 882.408 which will be subject to reduction based on a post audit.

Counts I through III of the countercomplaint. The stipulation also provides the amount of the judgment to be entered in FGI's favor with respect to the claims against HAPG. In light of the Court's ruling and the stipulation, the Court will deny FGI's Motions to Dismiss Counterclaim and For More Definite Statement as moot, enter judgment in favor of FGI on all remaining claims, and close this case.

A separate Order will issue.

### *MEMORANDUM AND ORDER*

Presently before the Court is Defendant Cisneros' Motion to Alter or Amend Judgment. (Paper No. 40). Defendant Housing Authority for Prince George's County ("HAPG") and Plaintiff have opposed (Paper Nos. 41 and 42 respectively). Defendant Cisneros has replied. (Paper No. 43)

In its motion, Cisneros requests the Court to issue an order "making clear that paragraph 5 of the order entered by this Court on August 9, 1993 is not binding upon defendant Cisneros or the United States Department of Housing and Urban Development." Paper No. 40. Paragraph 5(b) of the Court's order of August 9, 1993 provides, "the base and contract rents at the Foxglenn Apartment Complex for the years 1988–1993 shall be set at the amounts established in the stipulation." Paper No. 39. The "stipulation" refers to Paper No. 37, an agreement between Plaintiff and HAPG. The stipulation agreement did not involve Cisneros or HUD. Paragraph 5(b), therefore, does not bind HUD.

Accordingly, IT IS this 23rd day of December, 1993, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant Cisneros' Motion to Alter or Amend Judgment is hereby GRANTED;

2. That the Court's Order of August 9, 1993 (Paper No. 39) is hereby CLARIFIED as set out in the text above; and

3. That the Clerk of the Court shall mail copies of this order to all counsel of record.