TERRACE HOUSING ASSOCIATES, LTD., and Rolling Green Housing Associates, Ltd., Plaintiffs–Appellees,

v.

Henry G. CISNEROS, Secretary, Department of Housing and Urban Development, Defendant–Appellant,

and

Oklahoma City Housing Authority, Defendant.

ROLLING GREEN HOUSING ASSOCIATES, LTD., and Terrace Housing Associates, Ltd., Plaintiffs–Appellees,

v.

Henry G. CISNEROS, Secretary, Department of Housing and Urban Development, Defendant,

and

Oklahoma Housing Finance Agency, and Oklahoma City Housing Authority, Defendants–Appellants.

WINDSONG HOUSING ASSOCIATES, LTD., Plaintiff–Appellee,

v.

Henry G. CISNEROS, Secretary, Department of Housing and Urban Development, Defendant–Appellant,

and

Tulsa Housing Authority, City of Tulsa, Oklahoma, Defendant.

Nos. 93–6267, 93–6268, 93–6272, 93–6276 and 94–5032.

United States Court of Appeals, Tenth Circuit.

Aug. 9, 1994.

Deborah Ruth Kant, Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Washington, DC, Vicki Miles–LaGrange, U.S. Atty., Oklahoma City, OK, and Michael Jay Singer, Dept. of Justice, Washington, DC, with her on the brief) for Henry Cisneros, Secretary, Dept. of Housing and Urban Development.

Steven D. Gordon, Dunnells & Duvall, Washington, DC (Michael H. Ditton, also of Dunnells & Duvall, with him on the brief) for appellees, Rolling Green Housing Associates and Terrace Housing Associates, Ltd.

R. Steven Haught, Daugherty, Bradford, Haught & Tomkins, P.C., Oklahoma City,

OK, submitted a brief, for appellant Oklahoma City Housing Authority.

Jack R. Lawrence, Lawrence & Ellis, P.A., Oklahoma City, OK, submitted a brief, for appellant Oklahoma Housing Finance Agency.

Before LOGAN and McWILLIAMS, Circuit Judges, and BROWN, Senior District Judge*.

WESLEY E. BROWN, Senior District Judge.

Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f, set up a system of housing assistance payments to aid low income families in renting decent housing. There are several federal programs which provide Section 8 housing assistance and among them is the one involved in these cases—the Moderate Rehabilitation Program, 42 U.S.C. § 1437f(e)(2), hereafter referred to as the Program.[1] The appeals before us involve the efforts of the Secretary of the Department of Housing and Urban Development (HUD) to correct alleged overcharges and errors in contract rents negotiated for subsidized housing by public housing agencies and the private owners of such housing.[2]

The Secretary states that "as part of the ongoing effort to root out waste and fraud in the government-assisted housing programs," he discovered in 1992 that there were overcharges and errors in the initial contract rents set for the housing projects involved in these appeals, and he sought the rent rollbacks in order to recoup the government losses. The alleged errors resulted from the housing owners improperly including ineligible costs such as discount points, or inflated costs such as insurance charges, but it appears that the bulk of the errors came from change orders which increased rehabilitation costs. The Secretary found that since the changes were foreseeable, they should have been included in the original estimates of construction costs.[3]

The Secretary has directed that the initial contract rents set in 1987 be "rolled back" in order that alleged excess payments of housing subsidies may be recovered from the private owners. The owners filed these actions, claiming that a 1987 amendment to the United States Housing Act bars any kind of rent rollback. In each of the three cases now before us, the district court found that the amendment barred the rollbacks, and the Secretary has been enjoined from recovering the claimed overpayments.[4]

Under the statutory scheme, contract rates for rental units are set at the "fair market value" of such rentals in the particular housing area, but the low-income tenants pay rent according to their incomes, and the federal government makes up the difference between actual rents paid and the fair market value of the rental units through funding of the local housing authorities.

After rehabilitation of housing units is complete, the local housing authority inspects the property and enters into a "housing assistance payments contract" with the owner

---

\* The Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. This Program has been repealed, effective October 1, 1991, but all projects with binding commitments before that date continue in effect. Pub.L. No. 101–625, § 289(a)(4), (b).

2. Prior to oral argument of the Terrace Housing Associates and Rolling Green Housing Associates cases, this Court ordered that the Windsong Housing Associates appeal be submitted with those two cases. Similar appellate issues are presented in all three appeals.

3. It does not appear that the Secretary relies upon any findings of actual fraud or wrongdoing in connection with the housing contracts involved in these actions.

4. Terrace Housing Associates owns a complex of 206 apartments in Oklahoma City, purchased in 1987. The rent reductions ordered by the Secretary total $8,000 per month, or $96,000 per year. The alleged overpayments totaled $472,937, to be repaid in annual amounts of $67,592 for seven years.

The plaintiff Rolling Green Housing Associates owns a complex of 166 apartments located in Edmond, Oklahoma, purchased in 1987. The alleged overpayments totaled $377,611 for the years 1988–1992.

In 1987, the plaintiff Windsong Housing Associates borrowed over $5.8 million to purchase and rehabilitate its 292–apartment complex in Tulsa, Oklahoma. The rent reductions ordered in that complex total approximately $356,640.

of the housing. Such a contract sets a "contract rent" for each unit according to space. These contracts are reviewed by HUD before they are signed by the local housing authority.

Section 1437f(c)(1), 42 U.S.C., establishes the guidelines for setting initial contract rates according to the value of fair market rates. Section 1437f(c)(2) governs prospective annual adjustments in the contract rent to account for inflation and other changes in expenses. Section 1437f(c)(2)(A), which provides for annual adjustments in the contract rent, provides for these adjustments "to reflect changes in the fair market rentals established in the housing area...." Section 1437f(c)(2)(B) provides for annual adjustments due to increases in property taxes, utility rates, etc., which are not otherwise covered by the annual increase of Section 1437f(c)(2)(A). Section 1437f(c)(2)(C) provides that adjustments described above "shall not result" in material differences in rent between open market rentals and subsidized rents.

During the 1980's, it appears that HUD was relying on Section 1437f(c)(2)(C) not only to deny annual rent increases but to reduce rents when the agency's studies indicated that market rents were lower than those being charged for assisted housing. In 1987, Congress amended Section 1437f(c)(2)(C) to prevent the practice of reducing rents on that basis.

The 1987 amendment, 42 U.S.C. § 1437f(c)(2)(C), provides in pertinent part that:

> The Secretary **may not reduce the contract rents in effect on or after April 15, 1987,** for newly constructed, substantially rehabilitated, or moderately rehabilitated projects assisted under this section ... **unless the project has been refinanced in a manner that reduces the periodic payments of the owner.** (Emphasis supplied)

In each of the cases before us in this appeal, the district court found that the plain meaning of this amendment bars any effort by the Secretary to rollback rents in the housing complexes.

The Secretary contends that the amendment bars rent reductions only as to the annual prospective rent adjustments and not to the correction of errors in the establishment of the initial contract rents. In this respect, the contention is that the bar can only refer to the power of the Secretary to *adjust rents* and not to the power to establish the initial rents and to make corrections in those initial rents. The Secretary claims that the district court's reading of Section 1437f(c) "produces very harsh, inequitable results" for it would prevent him from correcting fraud and other serious errors in calculations.

We find that the 1987 amendment explicitly prohibits all reductions of contract rents. There is no distinction made for "annual adjustments of rent" and "corrections of initial contract rents" and, contrary to the Secretary's contention, the amendment is not ambiguous. The district court in the *Terrace Housing Associates* case, 1993 WL 643371, recognized the absence of ambiguity in the 1987 amendment in these words:

> The court cannot conceive a more clear direction from the Congress that rent rollbacks such as those contemplated in this case are prohibited.... (The Secretary) argues that the statute does not refer to contract rents as initially set, but rather that it prohibits reductions in rents based on authorized annual adjustments. The argument is a credible one, but in the end, the plain language of the statutory prohibition draws no such distinction. (Slip opinion, p. 5)

In the factually similar case of *Linden Housing Associates Ltd., v. Cisneros,* Case No. CV-N-92-358-HDM (D.C.Nev.1993), relied on by the district court in *Terrace Housing Associates,* the court found that rent rollbacks were barred, stating:

> After reviewing the history of the pertinent regulations, the Court is satisfied that the scope of HUD's "post audit" authority is limited to verifying the owner's cost and mortgage loan certifications, and recalculating the contract rents if any material errors are discovered in those certifications. However, this "post audit" authority is not a grant of plenary power to audit

and redo calculations of contract rents based upon alleged errors unrelated to the verification of the owner's cost and mortgage loan certifications.

In this case, HUD is not attempting to rollback the rents based on alleged errors in the owners' certifications. Instead, HUD contends that an alternative methodology should have been applied to determine the initial contract rents, and it is attempting to invoke the "post audit" authority to recompute the rents using that alternative formula. However, the "post audit" authority conferred by HUD's regulations and by the corresponding provision in the ... Contract does not extend this far. Accordingly, the rent rollbacks are unauthorized and are void for that reason.[5] (Slip opinion at p. 4)

Most recently, in *Atlantic Terrace Limited Partnership v. Cisneros,* (Civil Action No. 94–0051, 1994 WL 248239, May 23, 1994), the District of Columbia court, which was presented with facts identical to those now before us, ruled that the plain meaning of the 1987 amendment barring rent rollbacks must prevail. In so doing, the Court relied upon *Connecticut Nat'l Bank,* —— U.S. ——, at ——, 112 S.Ct. 1146, at 1149, 117 L.Ed.2d 391 (1992), which found that:

> canons of construction are no more than rules of thumb that help courts determine the meaning of legislation and in interpreting a statute a court should always turn first to one, cardinal canon before others ... (C)ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.

After reviewing case law, the *Atlantic Terrace* court found that five other courts, which decided six similar cases, had ruled that the plain meaning of the statute must prevail,

while only one agreed with the position of the Secretary.[6]

As noted by the court in *Atlantic Terrace,* the only case sustaining the Secretary's position is *2255 New York Ave., Ltd. v. Cisneros,* 842 F.Supp. 924, 931 (N.D.Tex.1994), where the court found "that the most reasonable reading of § 1437f(c)(2) in its entirety is that the statutory language upon which plaintiff relies applies only to adjustments in contract rents of those kinds contemplated by 42 U.S.C. § 1437f(c)(2)(A) and (B)" and not to the initial contract rents.

The Secretary contends that there are two regulations which authorize the rent rollbacks here. In the first instance, it appears that 24 C.F.R. § 882.408(d)(1)(v) allows HUD to rollback rents "(w)hen necessary to correct errors in computation of the base and Contract Rents to comply with the HUD requirements." However, our review of that section reveals it is entitled "Changes in Initial Contract Rents *during rehabilitation.*" (emphasis supplied). It is clear that that section does not apply here because rehabilitation was completed long ago. See *2255 New York Ave. Ltd., supra,* 842 F.Supp. at 931–32, *Foxglenn Investors, supra,* 844 F.Supp. at 1085, and *Atlantic Terrace, Ltd.* at p. 11, slip opinion, 1994 WL 248239. As noted by the *Atlantic Terrace* court:

> Section 882.408(d)(1)(v) is ambiguous at least as to the time frame in which it applies. It is improbable that Congress intended to grant HUD an indefinite power to correct errors; at some point the errors must become final. The heading clarifies this ambiguity by providing the necessary time frame.

The Secretary also claims that contract rates are always subject to reduction because

---

**5.** The *Linden Housing* court, noting that 24 C.F.R. § 882.507(c) pertains to post audits "but only for the purpose of verifying the owner's cost and mortgage loan certificates," held that "(c)orrection of errors by recalculations based on other criteria, i.e., 'methodologies,' are not contemplated."

**6.** The six cases in which the courts ruled that the plain meaning of the amendment must prevail are the three actions now before us, *Terrace Housing Associates, Rolling Green Housing Asso-*

ciates, and *Windsong Housing Associates,* and *Linden Housing Assocs., Ltd. v. Cisneros, supra,* appeal pending, Nos. 93–15899 and 93–15903 (10th Cir.), and *Foxglenn Investors Ltd. v. Housing Authority,* 844 F.Supp. 1078, 1084 (D.C.Md. 1993), *appeal docketed,* No. 94–1276 (4th Cir. Feb. 22, 1994).

In the *Foxglenn* case, the district court found that "the language of the statute unequivocally eliminates HUD's authority to implement rent rollbacks."

they are reviewing during a post audit, provided by 24 C.F.R. § 882.507(c). Such argument was also rejected by the *Atlantic Terrace* court which noted that:

> HUD claims that the review conducted by its investigators constitutes the "post audit" within the meaning of this regulation. HUD does not explain the breadth of its "post audit" authority, however, and no court has found this authority as sweeping as HUD claims.

The courts in *Linden Housing, 2255 New York Avenue,* and *Atlantic Terrace,* have agreed that the scope of the Secretary's "post audit" authority is limited:

> (T)he scope of HUD's "postaudit" authority is limited to verifying the owner's cost and mortgage loan certifications, and recalculating the contract rents if any material errors are discovered in those certifications. However, this "postaudit" authority is not a grant of plenary power to audit and redo calculations of contract rents based upon alleged errors unrelated to the verification of the owner's cost and mortgage loan certifications. *Linden Housing Assocs. Ltd.* as quoted in *2255 New York Avenue Ltd.,* 842 F.Supp. at 932.

We agree with the findings of the district courts in each of the cases before us in these appeals. There is no ambiguity to the prohibition which appears in 42 U.S.C. § 1437f(c)(2)(C), and the plain meaning of that amendment must prevail. "The Secretary may not reduce the contract rents in effect on or after April 15, 1987 … unless the project has been refinanced in a manner that reduces the periodic payments of the owner." None of the projects in question were refinanced in a manner that reduced the periodic payments of the owner. Therefore, the judgments in these appeals are AFFIRMED.